IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ISAAC JEROME SMITH** | * | |
| | * | |
| Petitioner | * | |
| | * | |
| v. | * | Criminal Case No. RWT-09-0213 |
| | * | Civil Case No. RWT-14-213 |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Respondent. | * | |
| | * | |

## MEMORANDUM OPINION

Pending is Petitioner Isaac Jerome Smith's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. Upon review of the papers filed, and for the reasons stated below, the Court will deny Smith's Motion.

## BACKGROUND

From 2005 through 2007, the leadership of the Metro Dream Homes ("MDH") program made extraordinary promises to investors. For an upfront investment of $50,000, not only would MDH make an investor's monthly mortgage payment, but would also pay off the investor's mortgage in full in five to seven years, no matter how much remained on the investor's mortgage. ECF No. 726 at 1. MDH supposedly used investor funds to purchase revenue generating equipment, consisting of ATM/check-cashing machines, point-of-sale vending machines, and "electronic billboards," i.e. flat-screen televisions that displayed advertisements.

*Id*.  Investors were told that these machines would generate the massive revenues required to meet MDH's massive obligations.[1]  *Id.* at 2.

Although MDH did purchase some of this equipment, it generated only nominal revenue. *Id.*  In reality, MDH relied entirely on new investor funds to pay its obligations to investors.  *Id.* MDH was thus a classic Ponzi scheme, and like all Ponzi schemes, it collapsed.  The collapse was precipitated in August 2007 by a series of negative articles in the Washington Post, and furthered by a cease-and-desist order issued by the Maryland Securities Commissioner prohibiting MDH from enrolling new investors.  *Id.* at 2-3.  Since the fuel driving any "successful" Ponzi scheme is new investor money that can be used to pay off existing investors and continue the mirage of a healthy revenue-generating enterprise, this action by Maryland inevitably led to MDH's collapse.  *Id.*  MDH was placed into receivership by a Maryland court. *Id.* at 3.

Smith was initially an early investor in MDH.  *Id.* at 1.  Shortly after investing, however, he changed his status from "future victim" to "future defendant" by getting hired as president of MDH, and enriching himself at the expense of other MDH investors, despite his knowledge that MDH was a fraud.  *Id.* at 1-4.

Smith and his codefendants were indicted on April 22, 2009.  ECF No. 1.  Smith was charged with one count of conspiracy to commit wire fraud, fifteen substantive counts of wire fraud, and one count of money laundering.  *Id.*  Smith proceeded to trial, along with codefendants Michael Hickson and Alvita Gunn, on January 11, 2011.  ECF No. 258.  After a lengthy trial, the jury returned a verdict of guilty on all counts.  ECF No. 337.  All of the

---

[1] These claims were truly extraordinary.  If an investor invested $50,000, and had a 30-year mortgage of $500,000, for MDH to be able to use that initial investment to make just the investor's minimum monthly mortgage payment over the life of the mortgage would require an outrageous annual return on investment of 30%.  Paying the mortgage off in five years, as MDH promised, would require an astronomical annual return on investment of 180%!  And these numbers ignore the payment of interest on the mortgage's outstanding balance.

defendants appealed, and the appeals were consolidated. The Fourth Circuit affirmed this Court on January 24, 2013. *United States v. Hickson*, 506 Fed. App'x 227 (4th Cir. 2013).

Smith filed a § 2255 petition on January 27, 2014, ECF No. 701, and filed a second petition on January 30, 2014. The only difference between these two petitions appears to be that the second one was signed by Smith.[2] Smith asserts the following grounds for relief:

1. Ineffective assistance of counsel where counsel failed to argue on appeal that an email should not have been admitted due to attorney-client privilege;

2. Ineffective assistance of counsel where counsel failed to object to a government witness's testimony that overstated Smith's salary from MDH by $1.2 million;

3. Ineffective assistance of counsel where counsel failed to argue that Smith's money laundering conviction should have merged with his wire fraud conviction.

*Id.* at 4-10.

## ANALYSIS

Under 28 U.S.C. § 2255(a), a prisoner in custody may file a motion to vacate, set aside, or correct a sentence, "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Pursuant to 28 U.S.C. § 2255(b), the Court may deny the motion without a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see, e.g.*, *Zelaya v. United States*, No. DKC 05-0393, 2013 WL 4495788, at *2 (D. Md. Aug. 20, 2013).

---

[2] The first was signed by Smith's wife. ECF No. 701 at 13.

-3-

Each of Smith's claims are ineffective assistance of counsel claims. In order to establish ineffective assistance of counsel, Smith must satisfy the test set forth in *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Under the *Strickland* test, Smith must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 689. He must also show the deficient performance prejudiced him, i.e. that but for counsel's deficient performance, "there is a reasonable probability that…the result of the proceeding would have been different." *Id.* at 694.

### I.     Failure to Argue on Appeal that Email was Privileged

Smith argues that his attorney was ineffective because he failed to argue on appeal that an email between Smith and one Richard Lipsman, whom Smith characterizes as his personal attorney, should have been excluded as protected by attorney-client privilege. ECF No. 701-2 at 10. However, Smith manages to destroy his own argument here in one fell swoop. "The Petitioner then *forwarded this e-mail to others, including Hickson and Gunn.*" *Id.* (emphasis added). It is well-established that attorney-client privilege is waived when a person covered by the privilege discloses confidential information to a party not covered by the privilege. *Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998). Since Smith waived whatever privilege may have attached to the email when he forwarded it to others, he had no basis to claim the privilege. Accordingly, his attorney was not ineffective for failing to make a losing argument on appeal.

### II.    Failure to Object to Mischaracterization of Smith's Income

Smith argues that his attorney was ineffective for failing to object to a government witness's statement that he drew a $1.4 million salary, when he in fact only drew a $200,000 salary. ECF No. 701-2 at 4. According to Smith, this misstatement, coming as it did in the

middle of "the recent economic downturn," so inflamed the jury's natural prejudice towards the wealthy that it abandoned all reason and convicted Smith based on its (misplaced) jealousy of Smith's income alone. *Id.* at 4-7 ("Defense counsel failed to object to this mis-statement, thereby allowing the jury to be prejudiced. There [c]an be little doubt that the recent economic downturn has resulted in a rise in prejudice against the wealthy.").

This argument has no basis in fact. First, the government witness who testified as to what Smith received stated that, *in total*, he received $1.4 million in payments from MDH, not that this was his yearly salary. ECF No. 633 at 159 (testifying that "what we're talking about, salaries; we're talking about the monies for his mortgages, the money for the Bentley."). Also, while it may be true that Smith's attorney did not object to the government witness's statement of how much money he was paid by MDH,[3] his attorney did undertake a vigorous cross-examination of this witness, challenging her characterization of this amount, and ultimately getting her to admit that the $1.4 million figure was offset by over $900,000 in payments Smith made into the MDH program. *Id.* at 148-73. Smith's attorney effectively challenged the government witness's conclusions regarding his remuneration.

### III. Failure to Argue Merger of Money Laundering Conviction with Wire Fraud Conviction

Smith makes at least a colorable argument that his money laundering conviction should have merged into his convictions for wire fraud and conspiracy to commit wire fraud. ECF No. 701-2 at 13-15. The Supreme Court in *United States v. Santos*, 553 U.S. 507 (2008) held that where a defendant was convicted of both running an illegal gambling operation, and of illegally laundering the proceeds of that operation by paying money out to the winners, the

---

[3] Smith does not say what the basis for this objection would have been under the Federal Rules of Evidence, other than apparently the statement was factually incorrect. Of course, the factual accuracy of testimony can be sussed out on cross-examination, as it was here.

money laundering conviction merged into the illegal gambling operation conviction. The Fourth Circuit subsequently held that, where the government charged a defendant with wire fraud for operating a Ponzi scheme, and with money laundering for making payments to investors in connection with the Ponzi scheme, the conviction for money laundering merges with the conviction for wire fraud, because the payments to investors constitute "essential expenses" for carrying out the Ponzi scheme. *United States v. Simmons*, 737 F.3d 319, 328-329 (4th Cir. 2013). Plausibly, this same argument could have been made on appeal in Smith's case, which was taken after *Santos*, but before the Fourth Circuit's decision in *Simmons*.[4] In order to determine whether this claim has any validity, the Court would need to dive into the record to determine the facts underlying the money laundering count, and determine whether the payments supporting that count were "essential expenses" of the MDH scam, in which case the conviction would presumably merge, or whether payments were simply disposition of profits, in which case the conviction would not merge. *Simmons*, 737 F.3d at 327-329. The Court would then need to examine counsel's decision not to present this argument, to determine, notwithstanding that the Fourth Circuit later ruled favorably on a similar issue, whether the decision not to raise the issue on appeal was reasonable at the time, ignoring the benefit of hindsight. *Strickland*, 466 U.S. at 689.

However, Smith has suffered no prejudice here, so the Court need not undertake this extensive and involved inquiry. *Id.* at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"). As Smith himself acknowledges, establishing prejudice means

---

[4] The government argues that because Smith's conviction was for money laundering conspiracy, which "does require proof of the execution of the object of the conspiracy, the analysis and reasoning applied in *Simmons* is not controlling." ECF No. 726 at 9. The government may be correct, but it does not offer any further rationale beyond this somewhat confusing explanation.

establishing that, as a result of counsel's errors, a defendant has to spend one additional day in jail. ECF No. 701-2 at 4 (citing *Glover v. United States*, 531 U.S. 198 (2001)). Smith was sentenced to 70 months on each of the 17 counts of which he was convicted. ECF No. 486. These 17 sentences all run concurrently. *Id.* at 2. The upshot is that vacating the one conviction on the money laundering count would have no effect on Smith's situation; he would not spend a single additional day in jail. Because he has failed to show prejudice, Smith's ineffective assistance of counsel claim fails.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability will only issue if Smith has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); *Hardy*, 227 Fed App'x. at 273. A petitioner "satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable." *United States v. Riley*, 322 Fed. Appx. 296, 297 (4th Cir. 2009). The Court has assessed Smith's claims. He has failed to raise a cognizable § 2255 claim in which a reasonable jurist could find merit, and thus no certificate of appealability shall issue.

## CONCLUSION

For the aforementioned reasons, Smith's petition will be denied and no certificate of appealability shall issue. A separate Order follows.

June 4, 2015                                       /s/
                                       Roger W. Titus
                                       United States District Judge